INHABITANTS OF GARLAND *versus* INHABITANTS OF DOVER.

Children living separate from the father on account of his poverty, the parental and filial relations in other respects continuing, are still under the parent's care and control.

Supplies furnished such children, they living in another town from their father, are supplies indirectly furnished him, and prevent his gaining a settlement by lapse of time in the town in which he may reside.

THIS action was brought to recover for supplies furnished to Robert French, a minor son of Simon French, as a pauper. The writ was dated the 28th of February, 1838, and the sup-

plies furnished between the 22d of May and the month of No-
vember, 1837. On the trial, before SHEPLEY J. it was admit-
ted that Simon French had a legal settlement in Dover on
the first of January, 1830. Said French being called as a
witness, testified, that in May, 1830, he sold out the improve-
ments of his farm in Dover, and removed his goods into Gar-
land, and in November following took up his residence in that
town, with the intention of remaining there, and has since
remained there, excepting for about one year and a half, when
absent in Bangor, for a temporary purpose.—that about the time
of his leaving Dover, his family was broken up, and in June of
that year his wife was convicted of the crime of adultery, and
sentenced to one year's imprisonment in the State's prison,
and he had never since seen her, and that she died in a year or
two after leaving the prison — that when he left Dover, he bound
out his two sons till fourteen years of age, and left his two
daughters in Dover, where they remained, and that he had not
controlled them nor furnished them any assistance, except pro-
viding one pair of shoes for each of them in the fall of 1837;
that he did not keep house after leaving Dover, until 1839, in
the fall, when his daughter Anna came to live with him; that
if he had been able, he should have taken care of them; that
he understood that his daughter Elizabeth received supplies
from Dover while under age; that he did not take any of their
wages or earnings, or call for them, or in any way exercise any
control over them, but they made their own contracts and re-
ceived their own earnings.

There was evidence tending to prove that the daughters in
the years 1834–5, and at other times, received supplies as
paupers from the town of Dover, being then minors, and the
plaintiffs contended that these supplies furnished the daughters,
were indirectly furnished the father and had the effect to pre-
vent his gaining a legal settlement in Garland by a residence
of five years.

Upon this evidence, the defendants' counsel requested the
Court to instruct the jury, that if French, at the time he sold
out his improvements in the town of Dover, and established

Garland *v.* Dover.

his residence in the town of Garland, abandoned his wife, broke up his family and left his daughters behind him, to provide for themselves, without claiming parental authority, or exercising parental duties over them, the supplies thus furnished, though furnished to them as paupers, they standing in need of relief, would not defeat his settlement in Garland, provided he had continued to reside in said town five years together, and had received no other support from any town during that period.

These instructions the Court declined giving ; but instructed them that the father was entitled to the earnings of his children and had the right to control their course of life, and was bound to support and educate them ; and that if they were separated from the father in consequence of the breaking up of the family, or for other cause, and that he turned them off to get their own living, intending to do no more for them, whether able or unable, and that he did not, till 1837, provide any thing for them, and that the parental and filial relations were broken up, the supplies furnished them would not prevent the father's gaining a legal settlement in Garland. But if satisfied that the cause of their separation was the poverty of the father, and that the parental and filial relations remained in other respects unchanged, supplies to them must be regarded as supplies to the father and would prevent his gaining a settlement in Garland.

The jury returned a verdict for the plaintiffs.

*A. W. Paine,* for the defendants. The prominent question here seems to be, whether in order to prevent the supplies from having the statute effect, the Court will distinguish between the motives which compel the separation, and whether the abandonment ceases to have any effect, if brought about by poverty, or by other causes than crime. This question has been under the consideration of the Court in the following cases ; *Green* v. *Buckfield,* 3 Greenl. 136 ; *Dixmont* v. *Biddeford,* 3 Greenl. 205 ; *Hallowell* v. *Saco,* 5 Greenl. 143 ; *Raymond* v. *Harrison,* 2 Fairf. 190. In no one of these cases is any allusion made to the cause or reason for the breaking up of the family, as a material point.

The Court, in the case at bar, place reliance upon the point that there must be a breaking up of the parental and filial relation. But in the cases cited, that is not made an important fact. In the case of *Green* v. *Buckfield*, the Court rely upon the opposite fact; and the whole argument of that case proceeds upon reasons which exclude the idea of a real abandonment, or a breaking up of the filial and parental relation. All the cases cited, place the decision upon the fact, whether or not the supplies were furnished to one under " the care and protection" of the parent ; and the question, *whether* there was a real or intentional abandonment, is not considered of any importance.

This rule, whether the child was under the care and protection of the parent, will make the question to be settled intelligible and easy of determination. If the. causes of separation are to be regarded, doubt and uncertainty take the place of that which is certain and definite. The rule contended for, makes the question not one of fact, but of probability. The question to be settled would be — what would the father do, if not poor ? would he support his children ? If he were absent, the evidence to be introduced would be the character of the father ; and according as that was good or bad, the question of settlement would be determined. Again, why should poverty be singled out as the only cause which should prevent the separation from having any effect ? Were the separation caused by crime on the part of the child, or unkindness on that of the parent, ought not those causes to have the same effect as poverty ? The rule of the Court would make the father, whose regard for his children continued with undiminished force, a pauper by reason of supplies furnished a son in distress ; *while, in case the father had entirely ceased to have* any interest in the welfare of his son, but was utterly indifferent to his well being, and had entirely abandoned him, then supplies furnished would not have such effect. So that the effect of the same statute, in different individuals, would vary accordingly as their love for their offspring should vary ; and the decision of a cause would be made dependent upon no external fact, but upon internal feelings.

*J. Appleton*, for the plaintiffs. The main objection taken to the charge of the presiding Judge, is to the proposition, that if the jury were satisfied that the poverty of the father was the cause of the separation of the parent and children, and that the parental and filial relations remained in other respects unchanged, then the supplies furnished the children must be regarded as supplies indirectly furnished the father. The fact supposed to exist by the ruling of the Court, may be considered as established by the finding of the jury. The case is not that of emancipation, abandonment, or any dereliction of duty, on the part of the parent. The true question is, whether a separation caused by poverty is, *ipso facto*, an abandonment? whether mere poverty is a dissolution, by operation of law, of the relative duties and obligations of parent and child? Here there was no greater abandonment nor disruption of parental and filial ties, than in every case of extreme poverty. Abandonment is constructive emancipation. Were the children of French emancipated? Were they *sui juris?* If so, then all children of parents unable from poverty to support them at home, are emancipated. Such are the consequences of the position which the counsel for the defendants seeks to establish. *The Etna*, Ware's Rep. 462.

The requested instruction was properly refused, the jury having negatived the facts upon which it was predicated. The cases cited do not support the requested instruction. The leading case on this subject is that of *Green* v. *Buckfield*, and all the other cases are merely inferences deducible from that. That was the case of an abandonment — of the dissolution of the parental relation — of an entire want of interest in the wellbeing of the offspring; here, the reverse was the fact — the will, the desire, all but the means to discharge the duties of a parent, existed in full force. There is no case which establishes the doctrine that an involuntary separation, caused by parental inability, is a legal abandonment. The children of the pauper were as much under his control, as, from his and their relative situations, they could have been expected to be.

The opinion of the Court was delivered by

WESTON C. J. — During the period when Simon French, the father of the pauper, is supposed to have gained a settlement in Garland, he had broken up housekeeping, and no member of his family actually resided with him. His minor children, however, might be under his care and protection. Upon the facts found, his daughters were not emancipated, as clearly appears from the authorities cited for the plaintiffs. Some of the facts, assumed by the counsel for the defendants, in his requested instructions, have been negatived by the jury. They have found, that the separation of the daughters from the father, was occasioned by his poverty; and that in other respects the parental and filial relation continued. They were therefore under his care and protection, as much as his and their condition permitted. He was bound to maintain them. He would have performed this duty if he could. His poverty alone prevented. The supplies for his daughters, which he would have furnished, if he could, were provided by the town. This was indirectly receiving supplies as a pauper. He is a pauper, who is unable to provide necessary food and clothing for his minor children, and leaves them to be aided by the town.

*Judgment on the verdict.*