## THE INHABITANTS OF CLINTON *versus* THE INHABITANTS OF YORK.

If a person, who afterwards becomes a pauper, removes from the town wherein he usually resides, by order of the selectmen of the town, to prevent his gaining a settlement therein, and his removal is for that purpose only, to remain in the town to which he removes for a few weeks only, with an intention not to abandon his former residence, but to return there as his home; such removal and return will not prevent his gaining a settlement by a residence in the former town, "for the term of five years together."

If it be proved, that a minor daughter "had lived about in a good many places, since she was a child;" that during her minority, her father said, "that he would not have her at his house; that his wife was quarreling with her; and that he was not able to take care of her, under the circumstances she was then in;" and that her brother took her to his house, and she was there delivered of a child, while she was a minor; this does not show that she was emancipated.

If supplies are furnished to a minor daughter, living in the same town as her father, by the overseers of the town, and such supplies are necessary, it is not material, at whose request they were furnished. Her father must thereby be considered as having received supplies indirectly.

ASSUMPSIT to recover the amount of expenses incurred by the plaintiffs in the relief and support of John Beal, his wife and two children, who were alleged to have fallen into distress, in Clinton, and whose legal settlement was averred to have been in York.

At the trial before WHITMAN C. J. certain facts were admitted, and fifteen witnesses were examined, introduced by the one party, and by the other, whose testimony is given in the report of the case. After the witnesses had been examined, the case was taken from the jury; and the parties agreed, that it should be submitted to the Court upon the evidence, the Court to draw such inferences as a jury could properly draw, and to enter such judgment, as should be deemed legal, upon nonsuit or default.

The facts admitted, and what the Court considered to have been proved by the testimony, appear in the opinion of the Court.

*Evans* argued for the plaintiffs, citing, *Garland* v. *Dover*,

19 Maine R. 441 ; *Corinna* v. *Exeter*, 13 Maine R. 321 ; *Poland* v. *Wilton*, 15 Maine R. 363.

*Moody* argued for the defendants, citing, 10 Pick. 77 ; 21 Maine R. 357 ; 3 Greenl. 455 ; 4 Greenl. 47 ; 5 Pick. 37 ; 17 Pick. 126 ; 1 Metc. 42 ; 3 Greenl. 136 and 205 ; 5 Greenl. 143 ; 16 Maine R. 427 ; 18 Maine R. 376 ; 19 Maine R. 441 ; 13 Maine R. 321 ; 14 Mass. R. 396 ; 23 Maine R. 410 ; 1 Fairf. 85.

The opinion of the Court was drawn up by

SHEPLEY J. — It is admitted, that John Beal and wife, and two children, were supplied as paupers, during the year 1843, by order of an acting overseer of the poor, of the town of Clinton ; that due notice thereof, was given to the town of York ; that an answer was seasonably returned by that town, denying their liability ; that Beal was married to his last wife, on June 30, 1839 ; that their oldest child was born in August, 1840 ; and that Beal once had a legal settlement in the town of York.

As the statute provides, that all settlements acquired shall remain, until lost by gaining others, the burden of proof is on the defendants to show, that Beal has gained another.

They contend, that he gained one, in the town of Canaan, by a residence there, on March 21, 1821. The only testimony introduced to prove it, is, that he was in that town, and left there in the year 1813, during the war, and returned there after the peace, was there in the years 1815 and 1816, and removed from there in the year 1839. The Court cannot from such testimony conclude, that he had a residence there, in the month of March, 1821.

They further contend, that he gained a settlement in the town of Clinton, by a residence in that town " for the term of five years together," without receiving supplies as a pauper. The testimony proves, that he removed from the town of Canaan to the town of Clinton, in the month of September, or early in the month of October, 1834 ; and that he continued to reside in Clinton, until the month of August or September,

1839, when he removed to the town of Harmony, and remained there, about three weeks, and then returned to the town of Clinton, and continued to reside there, until he removed to the town of Unity, some time during the year 1840.

There is a conflict of testimony respecting the exact time of his removal from Canaan to Clinton, and of his removal from Clinton to Harmony.   It becomes unimportant to decide according to the weight of testimony, when those removals were made, for his removal from Clinton to Harmony was not of such a character as to prove, that his legal residence did not continue to be in Clinton during that time.   The testimony shows that removal to have been made, by order of the selectmen of the town of Clinton, to prevent his gaining a settlement in that town and that he removed for that purpose only, to remain in the town of Harmony for about three weeks with an intention not to abandon his residence in Clinton, but to return there as to his home.   Such a removal and return, could have no more effect to change his established residence, than a removal would have, for the same length of time occasioned by business, illness, or pleasure, and accompanied by an intention to return, when the time expired.   His residence must therefore be considered as established in the town of Clinton, from September or October, 1834, to the time, when he removed to Unity in the year 1840.   Unless he received directly or indirectly, supplies, as a pauper, in such a manner as to prevent there being any five successive years, during that period, when he was not thus supplied, he would gain a settlement in that town.

The plaintiffs contend, that there was no such period of five years, and the defendants, that there was.   The testimony proves, that his daughter, Mary Beal, was supplied in the town of Clinton from some time in the month of January until the tenth day of June, 1835, when she was removed by the town of York.   The counsel for the defendants insists, that those supplies should not be considered as indirectly furnished to her father; because she was then of age; and that if she was not, she was emancipated; and if not emancipated, that the sup-

plies were not furnished at the request of her father, but at the request of her brother. Elisha Buzzell testifies, that this daughter was born about a year after her father's return, after the peace following the war of 1812, and that she was twenty-eight years old in May, 1844. The testimony of Samuel Beal, her brother, is to the same effect. There is nothing in the case, as reported, to destroy the effect of this testimony, which proves her to have been under age, when thus supplied as a pauper.

Her brother Samuel also testifies, that she had " lived about in a good many places, since she was a child;" that in December, 1834, her father said, he would not have her at his house; that his wife was quarreling with her; that he was not able to take care of her, under the circumstances, she was then in; that he took her to his house, and she was delivered of a child the last of December. There is no other testimony tending to prove that she had been emancipated; and this does not prove it.

Her brother further testifies, that she received supplies, while she was at his house, and that neither he, nor his father could furnish them. As they appear to have been necessary, and to have been supplied by the overseers of the poor, of the town, it is not material at whose request, they were furnished. Her father must thereby be considered as having received supplies indirectly until June 10, 1835.

To prove that there could not have been five successive years, after that time and before Beal removed to Unity, during which no supplies were furnished, the testimony of Dr. Garcelon, is referred to, by the plaintiffs' counsel. He states, that he was called upon to visit the wife of Beal, in the year 1837, when sick; that when going or returning, he notified the overseers, and they directed him to charge the amount to the town, which he did; and that he had no doubt, he had been paid for it by the town, but did not recollect as to that. When a question of such importance as the settlement of a pauper is to be decided by it, such testimony is too loose and unsatisfactory to prove, that supplies were then actually furnished by affording medical advice and assistance.

Clinton *v.* York.

He further testifies, "that in April, 1840, he was called to attend Beal's present wife, made two visits, notified the overseers, either before the first visit or after the first and before the second, was authorized to attend on behalf of the town, and did so, and was paid by the town; that he could not say, that Beal knew he charged his visits to the town; that Beal sent for him."

The counsel for the defendants insists, that this testimony only proves another attempt to prevent Beal from gaining a settlement in Clinton, made in a spirit, similar to that, which caused his removal to Harmony; and that supplies, furnished for such a purpose, can have no such effect.

All the testimony shows, that Beal was extremely poor. The overseers of Clinton, appear to have supposed, that they had accomplished their object of preventing his gaining a settlement *by causing him to remove to Harmony, and the motive for a fictitious supply is not apparent.* He considered the assistance of a physician necessary, and sent for him. The physician was unwilling to afford it upon his credit. The overseers being satisfied by the information obtained from the physician, that it was necessary, might properly furnish it without an application from Beal. The Court would not be authorized by the testimony to conclude, that it was provided unnecessarily, or from any improper motive; and that supply is sufficient to prevent Beal from gaining a settlement in Clinton.

*Defendants defaulted.*