Hon. JOHN S. TENNEY, LL.D. } ASSOCIATE
Hon. SAMUEL WELLS, .
Hon. JOSEPH HOWARD, } JUSTICES.

---

INHABITANTS OF BANGOR *versus* INHABITANTS OF READFIELD.

Desertion by a minor child from his father's home, with vagrancy and crime, does not constitute emancipation, so long as the father has not relinquished his right of control, nor consented that he should act for himself independently of the father.

Supplies, furnished by a town to a minor child, without the knowledge or consent of the father, *while the father is of ability to support the child*, will not prevent the father from gaining a settlement by five years residence, under the sixth clause of the first section of R. S. c. 32.

ASSUMPSIT, for supplies furnished to Julia Packard, the legitimate child of Silas Packard, whose settlement was formerly in Readfield, but who had afterwards resided in Levant for the term of five years ending in Dec. 1848.

Julia deserted her father's house in Dec. 1845, without his consent or knowledge, and lived in vagrancy and crime, and

though she once returned and remained two days at his house, she refused to make her home there or.to stay there any longer. She was several times committed to the house of correction in Bangor, and there received the supplies, for which this suit is brought.

The case was taken from the jury by consent, and submitted to the court for a legal decision.

*D. T. Jewett*, for the plaintiffs.

Supplies furnished to minor children are supplies furnished to their father, so as to affect his settlement. 3 Greenl. 136, 205; 5 Greenl. 143; 26 Maine, 167; 19 Maine, 441; 4 Greenl. 47.

Minor children cannot have a settlement distinct from that of their father, unless emancipated. 1 Greenl. 93, 196; 18 Maine, 376; 19 Maine, 447.

This child was not emancipated. But if she was, she gained no new settlement of her own. She cannot be *so far* emancipated, that supplies furnished *to* her will *not* prevent her father's gaining a new settlement in Levant, and yet *not so far* as to prevent his new settlement taking away her derivative one.

*Ingersoll*, for the defendants.

Emancipation and abandonment are different things, and have not the same effect upon questions of settlement. 2 Fairf. 190; 3 Greenl. 205; 27 Maine, 489.

This was not a case of emancipation. Parental control was never relinquished. It was a case of desertion or abandonment by the child. The father was of ability to support her, and was desirous to support her at his own home. The supplies were furnished without his knowledge or consent; and he was never called on for re-payment.

Such supplies, so furnished, cannot affect the question of his settlement. 19 Pick. 480; 13 Pick. 303.

*Jewett*, in reply. The cases cited on the other side relate to supplies furnished, not to the children, but to the wife. The wife *must* follow the settlement of her husband; but

children, if emancipated or abandoned, *may acquire one for themselves.*

WELLS, J. — It is admitted, that Silas Packard, the father of Julia Packard, the pauper, had a settlement in Readfield in 1821, that he had resided in the town of Levant for five years successively, terminating December 17, 1848, and that she is a minor. Legitimate children follow and have the settlement of their father until they gain one of their own. If the daughter had been emancipated before her father acquired a new settlement in Levant, she would not have followed the new settlement of her father, but would have retained that, which she derived from him in Readfield, until she gained one in her own right. Emancipation confers upon a minor the power of acquiring a settlement in the same manner as if the minor were of full age. But it does not appear that the daughter was emancipated. The father never relinquished his legal right of control over her, nor consented that she should act for herself independently of him. She would therefore take any new settlement, which he might acquire during her minority.

But it is contended, that the supplies, furnished to the daughter, were in contemplation of law furnished to the father, as a pauper, and prevented him from gaining a settlement in Levant by a residence there for the term of five years.

It does not appear that the father was unable to support his daughter. The parental and filial relations were not sundered. She was not under his roof when she received the supplies, but his legal control over her remained, and had never been relinquished. He had not abandoned her, but without his knowledge, and in his absence, she had left his house and family.

It being understood that he was able to support his child, would the supplies furnished to her be considered as furnished to him indirectly as a pauper, within the intention of the statute? If he had been unable to relieve her, when she fell

into distress and was supported by the town, they would have been viewed as furnished indirectly to him, according to the cases of *Garland* v. *Dover*, 19 Maine, 441, and *Clinton* v. *York*, 26 Maine, 167.

It is said in the former case, that "he is a pauper, who is unable to provide necessary food and clothing for his minor children, and leaves them to be aided by the town." When a father, who has not received supplies for himself, is of sufficient ability to provide for his minor children, he cannot in any correct sense be denominated a pauper. A child, whose father possesses a large estate, when at a distance from home, may fall into distress, and be relieved by a town. The statute makes it the duty of the town, where the child may happen to be, to render the aid. But such aid does not convert the parent into a pauper, and thereby prevent him from gaining a settlement. The town, which renders such support, has a remedy for it against the town where the child has a settlement, and the latter against the parent, who is under legal obligations to support such child.

The father's ability in this case to support his daughter is not controverted, and the conclusion is, that the aid rendered to her by the plaintiffs did not affect his right to acquire a settlement in Levant, which he obtained by a residence there for the period of five years.

The defendants are not liable for the expenses incurred subsequently to December 17, 1848, at which time Silas Packard gained a settlement in Levant, but are for those which accrued prior to that time.                    *Defendants defaulted.*