TOWN OF CROYDON *v.* THE COUNTY OF SULLIVAN.

A person cannot gain a settlement in one town by residence and payment of taxes, or by derivation, while he is supported as a pauper by another town.

Nor can the father or mother of an unemancipated child acquire a settlement by residence and payment of taxes, while the son is a member of their family, and is supported as a pauper, at their request, by another town.

Whether the wife can acquire a settlement in her own right, during marriage, distinct from her husband, *quære.*

THIS is an application of the overseer of the poor of the town of Croydon to the county of Sullivan, for reimbursement of expenses incurred in the support of Henry Richardson, a pauper, from Dec. 2, 1864, to Jan. 23, 1866, amounting to $93.64.

The said Henry, with his parents, Jacob and Hepsibeth Richardson, moved from Springfield, in said county, to Croydon, Dec. 2, 1864, and has lived there since that date. He is fifty years of age, and has been from infancy, deaf, dumb, a *non compos*, and wholly unable to support himself, and having always lived with his father, now over eighty years of age, and who for fourteen years prior to Dec. 2, 1864, lived in Springfield.

Henry had his legal settlement in the town of Londonderry, until the

act of July 4, 1861, abolishing all settlements acquired prior to 1820, unless he had, prior to 1861, by reason of the facts hereinafter stated, acquired a settlement in Springfield. He became a pauper and public charge in Springfield, March 10, 1857, and the charges for his support were paid by Londonderry from that date until October, 1861, when, on application by Springfield, the county of Sullivan paid for such support until his removal to Croydon, Dec. 2, 1864, since which time the county has refused to pay the bills for the same.

His mother, Hepsibeth Richardson, and wife of Jacob, had a deed in her own right, and was taxed for, in Springfield, from 1854 to 1864, inclusive, and paid the taxes on real estate valued at over $500, which real estate was occupied during said time by said Hepsibeth and Jacob.

The money with which said estate was purchased, was earned by the personal labor of the wife, during coverture, and while living by mutual agreement temporarily apart from her husband for the purpose of enabling them to obtain a livelihood.

The husband never at any time claimed, used, or reduced to his possession said money, or any part of it. Neither the said Jacob nor Henry has ever been assessed or paid taxes in Springfield for four years in succession on real estate valued at $150, or personal estate valued at $250, or paid a poll tax for seven years in succession, unless said taxation of Hepsibeth was substantially a taxation of Jacob.

It is agreed by the parties that said Henry has no legal settlement in any town in this State, unless it be in Springfield, and if upon the whole case the court shall be of opinion that his settlement is not in Springfield, then this application shall be allowed; otherwise it shall be dismissed.

*W. H. H. Allen,* for Croydon.

I.   The obligation to support paupers arises solely from statute, and all statutes relating to the settlement and support of paupers must be strictly construed. *Mace* v. *Nottingham West,* 1 N. H. 52; *Meredith* v. *Canterbury,* 3 N. H. 80; *Otis* v. *Strafford,* 10 N. H. 352.

Henry Richardson has no settlement in Springfield unless he gained it by derivation from his father, Jacob, and Jacob has gained no settlement there, unless by virtue of his interest in his wife's estate. By a strict construction of the statutes, it is necessary, in order to gain a settlement in this mode, that the person himself shall actually own and pay all taxes assessed on an estate valued at $150, at least, for four years in succession, and his interest must be a clear one, not subject to doubt, and one which may be taxed. *Charlestown* v. *Acworth,* 1 N. H. 162; *Wakefield* v. *Alton,* 3 N. H. 378; *Sudbury* v. *Stow,* 13 Mass. 462.

A married woman may hold real estate against the heirs of her husband, and against all persons except his creditors and subsequent purchasers without notice, even when the purchase money arose from a sale of the husband's estate. *Jewell* v. *Porter & al.,* 31 N. H. 34. Richardson, therefore, could not well have gained a settlement in Springfield

by virtue of his interest in his wife's estate purchased with her earnings, even though they belonged to her husband.

II.   But if it should be held that Jacob Richardson might, by virtue of his interest in his wife's estate, have gained a settlement in Springfield, the support of Henry by the county was an admission which estops the defendants from now setting up a claim to a settlement for him in Springfield.   The support of a pauper by a town is competent evidence for a jury to infer a settlement in such town.   *Hopkinton* v. *Springfield*, 12 N. H. 328 ;   *Pittsfield* v. *Barnstead*, 40 N. H. 477. And when, as in this case, such support has been furnished continuously for a series of years, and the claim for such support has been adjudicated by the county commissioners, sitting judicially with all the powers and duties formerly possessed and exercised in such cases, by the court of Common Pleas, such an admission becomes conclusive evidence of a liability to support, and has the practical force of a judgment.   *Shirley* v. *Lunenburg*, 11 Mass. 379.

III.   At the time Henry Richardson first became a pauper, March 10, 1857, his settlement must have been in Londonderry, for if his father ever gained a settlement in Springfield, it could not have been until after that date ; not in fact, until after the taxes for the year 1857 had been assessed and paid ; and that could not have been until after April of that year.   Now, the support of Henry by Londonderry, while his settlement was in that town, would prevent his gaining a settlement in Springfield so long as such support was furnished by Londonderry, and subsequently by the county.   It has been well settled, that, while a pauper is supported by a town where his settlement is, he cannot during the time such support is furnished gain a settlement in another town where he may be domiciled.   *Oakham* v. *Sutton*, 13 Met. 192 ;   *Brewster* v. *Dennis*, 21 Pick. 233 ;   *East Sudbury* v. *Waltham*, 13 Mass. 460 ; *East Sudbury* v. *Sudbury*, 12 Pick. 1 ;   *West Newbury* v. *Bradford*, 3 Met. 428.   Henry, therefore, could never have gained a settlement in Springfield.   For, after receiving support from Londonderry, while his settlement was there, he could not take a settlement in Springfield by derivation from his father.

IV.   But it has been well settled, that a parent cannot gain a settlement in a town where he is residing, if during the time of such residence required by law to gain a settlement, his idiotic child, though over twenty-one years of age, receives support from another town where he had his settlement.   As Jacob Richardson had no settlement in Springfield in March, 1857, when Henry, his idiotic son, first received support as a pauper by Londonderry, where Jacob's settlement also then was, he never could have gained a settlement in Springfield since Henry, and thereby his father was supported by Londonderry and the county continuously from that date until December, 1864, since which time the Richardsons have lived in Croydon.   *Taunton* v. *Middleborough*, 12 Met. 35 ;   *Gardner* v. *Farmingdale*, 45 Me. 537.

The only alternative of this result is, that Henry became emancipated by receiving support from Londonderry. And in either view of the case, he never could have gained a settlement in Springfield.

*A. S. Wait*, for defendant.

1.   Our statutes do not authorize the conclusion in this State, as claimed by this applicant, that the pauper could not gain a settlement in Springfield by reason of support being furnished him by Londonderry during the period while the settlement was being acquired.   The modes of gaining settlements are matters of mere local law, and depend upon the local statutes of each State; and we contend that no such doctrine as that claimed by this applicant in the brief furnished by the counsel, can be drawn from the statutes of New Hampshire.

2.   The support of the pauper by the county cannot operate as an estoppel.   It can, at most, be competent evidence, tending to show a want of a settlement in any town in this State.   But we contend that it cannot be even that.   Although where a town submits to pay for support furnished to a pauper by another town as a pauper belonging to the former town, this might be evidence of an admission of a settlement, (which we do not admit,) it would by no means follow, that, because a county should submit to a claim of a town for support at any one time, they are therefore to be taken as admitting for all after time, the negative proposition that the pauper had no settlement in the State.

3.   But if the doctrine claimed by our opposing counsel, viz. : that support furnished to the son would be legal support furnished to the father, and would therefore prevent the father gaining a settlement, and the son gaining one under him, be correct, this would have no effect upon the settlement of the mother.   Now we claim that Hepsibeth Richardson, the mother of the pauper, gained a settlement in Springfield by virtue of her holding real estate to the requisite amount, and paying taxes on it the requisite length of time, to wit: from 1854 to 1864. The fourth clause of section 1, chap. 69, Compiled Statutes, enacts, that "any *person* of the age of twenty-one years, having real estate of the value of one hundred and fifty dollars," &c., "and paying all taxes," &c., "shall thereby gain a settlement."   And the words in the same section importing the masculine gender, may, by force of section 2, chap. 1, Compiled Statutes, be applied to the mother.   There seems to us a manifest reason why this section of chap. 69, Compiled Statutes, should apply to a married woman, when she otherwise comes within its language.   The first clause of sec. 1, chap. 69, Comp. Stat., enacts that "married women shall have the settlement of their husbands, if any he has, or shall acquire any," &c., "otherwise her settlement at the time of her marriage *shall continue.*"   The statute of 1861, chap. 2482, Pamphlet Laws, enacts, that "no town shall be liable for the support of any person unless he, or the person under whom he derives his settlement, shall have gained a settlement therein since the first day of January, A. D. 1820.   The original settlement of the mother before marriage, therefore, was interrupted and lost.   This being so, the true spirit

and meaning of all the statutes taken together, now very forcibly call for a literal interpretation of the fourth clause of sec. 1, chap. 69, Com. Stat., and the husband having no settlement of his own, the wife, and the mother of the pauper, could gain one by owning property in her own right, and paying taxes the requisite length of time—for she is a *person* within the meaning of this statute.

The pauper, then, derives his settlement in Springfield under his mother, by virtue of the second clause of sec. 1, chap. 69, Comp. Stat., which enacts that "legitimate children shall have the settlement of their father, if any he has," &c., "*otherwise the settlement of their mother, if any she has*," &c.

Having this settlement, the county is not liable, and this application ought to be dismissed.

BELLOWS, J.　The pauper has no settlement in this State unless he acquired one in Springfield between the years 1854 and 1861, inclusive, by derivation from his father. From the facts stated, the son during all this period was a member of his father's family, and although fifty years of age was not emancipated, being in a state of idiotcy.

It is claimed that the father gained a settlement in Springfield by residence and payment of taxes upon real estate, for four years in succession, during the above period. It appears, however, that the pauper was supported as such in Springfield, from March 10, 1857, until October, 1861, the charges for his support having been paid by the town of Londonderry, where his settlement was, until it was abolished by the law of July 4, 1861.

This raises the question whether a person can gain a settlement by residence and payment of taxes, or by derivation, in one town, while he is supported as a pauper by another town; it being apparent that without counting a portion of the time while the pauper was supported by Londonderry, the father cannot have resided and paid taxes in Springfield for four years in succession, before December 2, 1864, when the pauper removed to Croydon and was supported by the county.

The statute requires expressly that the residence and taxation should be four years in succession, and therefore, unless the pauper could gain a settlement by residence and payment of taxes while he was being supported as a pauper by Londonderry, he has no settlement in Springfield.

Although we find no decision, in this State, of this question, it has been the general understanding, we think, of the profession that a settlement cannot be gained by residence and payment of taxes while the person is a public charge as a pauper. It is obvious that while he is so supported as a public charge, he is in no condition to perform those duties as a citizen which the law regards as the foundation of his claim to a settlement by residence and payment of taxes. He may, indeed, pay his taxes in the town where he resides, but if he is enabled to do so only by the assistance which he receives from the public, it is obviously not such a payment as the law contemplates.

This question has repeatedly arisen in Massachusetts, under statutes similar to our own, and it is well settled, that under such circumstances

a settlement cannot be gained by residence and payment of taxes. *East Sudbury* v. *Waltham*, 13 Mass. 461; *East Sudbury* v. *Sudbury*, 12 Pick. 1; *Oakham* v. *Sutton*, 13 Met. 192, and cases cited; and *Choate* v. *Rochester*, 13 Gray 92. So is *Garland* v. *Dover*, 19 Me. 441; *Clinton* v. *York*, 26 Me. 167; and so it is held in Connecticut, *Norwich* v. *Saybrook*, 5 Conn. 384. In the case before us, the pauper has always lived with his father; is *non compos*, and wholly unable to support himself, and has never been emancipated unless by being supported at the public charge.

Assuming that he was never emancipated, the father was bound to maintain him so long as he had means to do so, without disposing of what must immediately be replaced to enable him and his family to live together. *Litchfield* v. *Londonderry*, 39 N. H. 247, and cases cited. If, then, the pauper was relieved by Londonderry, with the assent and procurement of the father, he being unable to support him—which is to be inferred from the case—we are of the opinion that the father himself did not gain a settlement in Springfield. Under the circumstances, the son, as a member of his father's family, would stand upon the same footing as if he had been a minor, and relief furnished the son at the father's request, would have the same effect as if furnished for himself. It is so expressly decided in *Taunton* v. *Middleborough*, 12 Met. 35. In *Berkely* v. *Taunton*, 19 Pick. 480, it was held that where a wife lived in another town and received relief as a pauper, it not appearing that it was with the husband's request or knowledge, or that he was unable to support her, this did not prevent his gaining a settlement; but the court say that a different question would have been presented had the support been furnished at the husband's request. In *Taunton* v. *Middleborough* the case of *Berkely* v. *Taunton* was fully considered, and this question decided.

In Maine, the doctrine of *Taunton* v. *Middleborough* seems to be well settled. In *Green* v. *Buckfield*, 3 Greenl. 136, it was held that supplies cannot be considered as furnished to a man as a pauper so as to defeat his settlement under their statute, unless furnished either to himself personally, or to some member of his family who continues under his care and protection, and therefore that supplies furnished to absent children, though minors, but forming no part of his family, could not be regarded as furnished to him. The same principle was applied to supplies furnished to the wife from whom the husband was separated, in *Hallowell* v. *Saco*, 5 Green. 143.

In *Garland* v. *Dover*, 19 Me. 441, it was decided that supplies furnished the pauper's minor daughters must be regarded as indirectly furnished to him, although the family by reason of poverty was broken up, and the father and daughters were separated; the parental relation, however, in other respects remaining, he having furnished them a little assistance. The court, *Weston, C. J.*, says, that "he is a pauper who is unable to provide necessary food and clothing for his minor children and leaves them to be aided by the town."

In *Clinton* v. *York*, 26 Me. 167, where supplies were furnished to a minor daughter living in the same town with the father, but not with

him, by reason of difficulties with the stepmother, and the father was unable to support her, it was held, per *Shepley, J.*, that the father must be considered as having received supplies indirectly, although there was no proof of any request from him.

The case of *Bangor* v. *Readfield*, 32 Me. 60, recognizes this doctrine, but holds that where the daughter, a vagrant, was absent and relief furnished to her without the knowledge or consent of the father, who was of sufficient ability to maintain her, that this did not make him a pauper. The same general doctrine is held in *Tremont* v. *Mt. Desert*, 36 Me. 390.

The same doctrine is held in Connecticut, in *Norwich* v. *Saybrook*, 5 Conn. 384, where it is held that if any member of a pauper's family is in fact chargeable to the town it will prevent the pauper's gaining a settlement.

We are of the opinion, then, that if the son was not emancipated, the obligation of the father to support him remained as if not of age, and that the father could not gain a settlement, while the son was supported by the town in his family, by residence and payment of taxes. If he was emancipated it is clear that he could not take any settlement that his father or mother may have acquired in Springfield, and it is therefore unnecessary to inquire whether he was emancipated by being thrown upon the town for support.

It is also contended in behalf of the county, that the wife acquired a settlement in Springfield by residence and payment of taxes, and that the pauper would take it by derivation from her, but we think it is a sufficient answer to say, that, whether the wife may, under any circumstances, while cohabiting with the husband, acquire a settlement distinct from him by residence and payment of taxes, she must be regarded in this case as a pauper equally with her husband. They with the son, together, composed one family, her duty towards the son was the same, morally, at least, as that of the father, and even although she might have the means of supporting herself apart from the others, she must, under the circumstances, be considered as participating equally with the husband in the relief furnished by the town of Londonderry.

In *South Hampton* v. *Hampton Falls*, 11 N. H. 134, it was held that the wife, who was at service and earning sufficient for her support, and might have continued to do so, but came to attend upon her husband in his sickness, and he needed and received relief, became herself a pauper, although the relief was furnished against her will and consent.

The principle of this case is decisive of the question before us, and therefore the wife no more than the husband could acquire a settlement in the way suggested, while receiving compensation for the support of an unemancipated son in their family.

As respects the capacity of the wife to acquire a settlement in this way, it was held in *Andover* v. *Merrimack County*, that she could, although there are authorities against that position. Among them are *Shirley* v. *Watertown*, 3 Mass. 322; *Hallowell* v. *Gardner*, 1 Me. 93; *Augusta* v. *Kingsfield*, 36 Me. 235; *Richmond* v. *Lisbon*, 3 Shepley 434, and cases cited; and *Thomaston* v. *St. George*, 5 Shep.

(17 Maine) 117.   It is held in these cases that the will of the wife is subjected to that of the husband, and that she cannot acquire a settlement that might cause a separation ; that it is the policy of the law that there should be but one settlement for both, and that the provision which gives a settlement to all persons residing and paying taxes as prescribed, applies only to those who at common law were capable of acquiring a settlement, which it was held, neither a minor nor married woman could do.   In *Farmington* v. *Jay*, 18 Me. 376, it was held that a legitimate minor child could not acquire a settlement, and see cases cited ; and so is *Taunton* v. *Plymouth*, 15 Mass. 203, and *Somerset* v. *Dighton*, 12 Mass. 383, but it is not necessary further to consider this question.

It being determined, then, that the pauper had no settlement in Springfield, the claim, according to the agreement of the parties, must be allowed.