Mar. 20,
1876. }          GILMANTON *v.* SANBORNTON.

*Pauper—Derivative settlement—Where the father is bound to support his unemancipated child.*

A father cannot gain a settlement during the time while aid is furnished him for the support of his unemancipated child, either by the town where he resides, or any other town.

A father is bound to support his unemancipated child as long as he is able; and when he is obliged to receive aid from the town for such purpose, he is himself a pauper.

If necessary aid is furnished to an individual by a town for the support of his unemancipated child, the fact that the selectmen did not intend to furnish the aid in such manner as to make him a pauper is immaterial, provided the aid is furnished with his knowledge.

FROM BELKNAP CIRCUIT COURT.

ASSUMPSIT. The case was referred to a referee, who reported that the action was brought to recover of Sanbornton for aid rendered by Gilmanton to one Ebenezer Chase for the support of John Chase, between December 10, 1874, and June 14, 1875, the expenditures amounting to $47. Notice of the expenditure was duly given to Sanbornton. Ebenezer Chase, the father of John Chase, now 73 years of age, resided in Sanbornton prior to 1840, and from that time to December, 1868, when he removed to Gilmanton. John Chase, the son, for whose support the action is brought, is now 52 years of age, and is an idiot, utterly incapable of caring for himself or contributing to his own support: he has always resided with his father, never had any estate, and has never been emancipated. From 1840 to 1846, Ebenezer Chase owned sufficient property in Sanbornton to gain a settlement in that town, and he paid all taxes assessed thereon. So, also, from 1865 to 1868, both inclusive, he owned sufficient estate in said town to enable him to gain a settlement therein, and paid all taxes assessed thereon. In 1846, and for four or five years after, the overseers of the poor of Sanbornton paid to Ebenezer Chase $18 a year, and afterwards, to 1872, including that year, paid him $30 each year. The entry of these payments, as made on the town records, was generally in these words, " Paid Ebenezer Chase for John Chase," and was entered on the town books, with other items of expenditures for the poor, under the general head of " Paid for support of External Poor." Under this general head was included all expenditures for paupers, except those on the town farm. In 1873 Sanbornton declined to pay Chase the $30, and in 1874 Ebenezer Chase applied to Gilmanton for aid, which was rendered to the amount sought to be recovered in this suit. The fact, that Ebenezer Chase had been paid

$30 a year by Sanbornton for four years after he removed to Gilmanton, was not known to the latter town until after the service of the notice on Sanbornton, March 10, 1875. The evidence to prove this last fact was admitted, subject to the defendants' exception. Ebenezer Chase owned sufficient estate in Gilmanton, from 1869 to 1875, to have enabled him to gain a settlement in that town, and paid all taxes assessed thereon. The name of Ebenezer Chase was kept on the check-list in said Sanbornton while he resided there, and afterwards on that of Gilmanton up to and including the election of 1875. No objection was made to his voting in either town.

Subject to the exception of the plaintiffs, three of the former selectmen of Sanbornton testified that the $30 a year was paid to Ebenezer Chase as a gift or donation; that it was so understood by them, these three officers, and by some of the citizens of the town. One of the three former selectmen testified that in 1873 they declined to pay the $30; that they thought Chase had been in Gilmanton long enough for them to have got interested in him; that it might have been coupled with the fact that he had been there long enough to have gained a settlement. The referee was of the opinion that this testimony was inadmissible and incompetent; but it was admitted for the purpose of getting at all the facts arising in the case. The referee finds, on the foregoing facts, that Ebenezer Chase had a settlement in Sanbornton at the time the right of action in this case accrued; that said John Chase had the settlement of his father, said Ebenezer Chase; that said Sanbornton is liable for the amount claimed in this suit, to wit, $47, with costs of reference taxed at        , and costs of court to be taxed by the court, unless the court shall hold that the testimony of the three selectmen, above stated, is admissible; and that, under the facts herein stated, John Chase, under his father, had gained a settlement in Gilmanton,—in which case there is to be judgment for the defendants for costs of reference and costs of court.

The questions arising upon the foregoing case were transferred to this court by RAND, J.

*Cogswell* and *Hibbard*, for the plaintiffs.

*Barnard*, for the defendants.

CUSHING, C. J. It appears, from the statement of facts in this case, that Ebenezer Chase, between the years 1840 and 1846, resided in Sanbornton, and during that time was the owner of sufficient property, and paid taxes thereon, to gain a settlement. The case does not show that Ebenezer Chase had gained a settlement in Sanbornton prior to 1840, so that, under the present law, settlements might be derived from his settlement.

John Chase, for whose support this action was brought, would, therefore, by derivation, have the settlement of his father, Ebenezer Chase, in Sanbornton, unless that effect is prevented by something

which appears in the case. Being unemancipated, he could acquire no settlement in his own right.

It appears from the case that from 1846 to the time when this cause of action accrued, Ebenezer Chase was receiving aid from the town of Sanbornton for the support of John Chase. If the testimony of the selectmen is admissible, it would have some tendency to show that the authorities of Sanbornton did not intend to furnish the relief in such way as to make Ebenezer Chase a pauper. If the law were so that a town might, with the knowledge of the individual, furnish aid to him in such way as not to make him a pauper, still I think that would be a fact to be found by the referee, and not an inference of law to be drawn by the court. The referee has not found that fact, but has found that neither John Chase nor his father had gained any settlement in Gilmanton. The selectmen of Sanbornton had no legal authority to furnish relief to Ebenezer Chase, unless he stood in need of such relief as a poor person; and they could not, by calling it a gift, alter the legal effect of the transaction.

The head notes of the case of *Croydon* v. *The County of Sullivan,* 47 N. H. 179, are as follows : " A person cannot gain a settlement in one town by residence and payment of taxes, or by derivation, while he is supported as a pauper by another town."

" Nor can the father or mother of an unemancipated child acquire a settlement by residence and payment of taxes while the son is a member of their family, and is supported as a pauper at their request, by another town."

" Whether the wife can acquire a settlement in her own right, during marriage, distinct from her husband, *quære.*"

I am unable to distinguish this case from the case at bar, and therefore, on its authority and that of the cases cited in it, I hold there must be judgment on the report.

LADD, J. *Croydon* v. *Sullivan County,* 47 N. H. 179, is decisive of this case. The selectmen of Sanbornton had no right to bestow the public money of that town in charity, except as a public charity according to the provisions of the law. This was what they did ; and their calling it, or understanding it to be, something else, could not change the substantial nature of what was done. I think there should be judgment on the report for the plaintiffs. .

SMITH, J., concurred for the same reason.

*Judgment on the report for the plaintiffs.*