INHABITANTS OF AUGUSTA *versus* INHABITANTS OF KINGFIELD.

By R. S. c. 32, § 1, mode 2, "legitimate children shall follow and have the settlement of their father, if he have any within the State, until they gain a settlement of their own; but if he have none, they shall in like manner follow and have the settlement of their mother, if she have any."

If the father of the pauper never had any settlement in the State, and has voluntarily and absolutely abandoned and deserted his wife and left the State; while he is living, she can gain no settlement independent of her husband in her own right.

And if she marry another illegally, while her first husband is living, she can acquire no rights by *residence* under that association.

But her settlement, at the time of her marriage, is not lost or suspended by marrying one having no settlement in the State.

Where the mother of the pauper at the time of her marriage lived with her father, who had a settlement in the town where they lived, this will not authorize the Court to infer that the mother had a derivative settlement from her father.

ON FACTS AGREED.

ASSUMPSIT, for the support of one Granger, a pauper. The notice and answer were regular and seasonable. The amount claimed was necessarily expended.

William Granger, the father of the pauper, never had a settlement in this State. In Sept. 1815, he married Sally Trask, the mother of the pauper, at the house of her father in Kingfield, — he then having a settlement in that town, and she residing with him.

William Granger left his wife and the State, before the pauper was born at his grandfather's in Kingfield, which was May 6, 1816, and has never contributed to the support of herself or his child, though she often heard from him, by way of other people, as living in New Brunswick, as late as the year 1842.

The mother and pauper continued to reside in Kingfield, in her father's family, till October, 1821 or 1822, when she married one Moody. In Feb. following, she, with Moody, removed into another town, and from thence to Bingham. In 1849, or 1850, Moody died. They never received aid as paupers.

The pauper continued to reside with his grandfather, and did not live with his mother after her marriage with Moody. In 1822, the grandfather, with the pauper, moved from Kingfield to Freeman, where they both lived together till the pauper became twenty-one years of age. Up to that time neither received aid as paupers. Since arriving at twenty-one years of age the pauper has gained no legal settlement.

It was stipulated, that upon these facts, the Court might draw such inferences as a jury might, and render judgment by nonsuit or default.

*Baker & Titcomb,* for the plaintiffs, took the following positions : —

1. The mother of the pauper had her residence in Kingfield, which was not changed by the marriage with Granger. The pauper's residence was in Kingfield, where he was born, the father having no other residence in this State.

2. The marriage with Moody, during the life of the first husband, was void, and no settlement of the mother of the pauper through her was gained thereby, or by her subsequent residence with Moody.

3. The pauper was emancipated, and gained a residence of his own, by residing with his grandfather in Kingfield, pursuant to § 2, c. 122, of Act of 1821. *Freetown* v. *Taunton,* 16 Mass. 52; *Granby* v. *Amherst,* 7 Mass. 1; *Lubec* v. *East-*

*port*, 3 Greenl. 220; *Dennysville* v. *Prescott*, 30 Maine, 470; *St. George* v. *Deer Isle*, 3 Greenl. 390.

*Paine & Pillsbury*, for defendants.

The plaintiffs are to satisfy the Court, that the defendants are chargeable. The burden of proof is on the plaintiffs.

The case finds that the father never had a settlement in the State, and that the pauper has not gained a settlement since he was twenty-one.

1st. The pauper is not proved to have gained a settlement in Kingfield through his mother.

It is true that the mother's father had a settlement in Kingfield at the time of her marriage, Sept. 28, 1815, and she was then residing with him. But *non constat* that she then had the settlement of her father. He may have gained a settlement there after she became twenty-one.

2d. But if the pauper's mother did have a settlement at the time of her marriage in 1815, she has since that gained a settlement in Bingham, and the pauper derivatively through her. She married a second husband in October, 1821 or 1822, and by carefully examining the statement, it appears that she moved with her second husband to Bingham sometime in 1826 or 1827. The pauper, born in 1816, would then have been ten or eleven years old. The mother, with her husband, continued to reside in Bingham from 1826 or 1827, to 1849 or 1850, receiving no aid as a pauper.

But it will be contended that the second marriage was void and that the pauper's mother could gain no settlement in Bingham by living there with a man who was not her husband.

The statement shows that prior to the birth of his child, in 1816, the father of the pauper left his wife and child, and abandoned the State, but that the wife heard from him as late as 1842.

The facts are not inconsistent with the wife's honesty. She may not have been married till the first husband had been gone seven years, and up to that time she may not have heard from him. A jury would be authorized to infer this in the absence of proof to the contrary.

The second marriage, therefore, was not illegal and void, and the wife might gain a settlement under her second husband in Bingham.

But if the second marriage was illegal and void, the woman was competent to gain a settlement in Bingham in her own right.

The case abundantly shows that the husband utterly abandoned his wife in 1815 or 1816 and the State too. Now it has been settled that under such circumstances the wife may be treated as a *feme sole;* may contract, sue and be sued. *Gregory* v. *Paul,* 15 Mass. 31; *Gregory* v. *Pierce,* 4 Met. 478; *Beane* v. *Morgan,* 4 M'Cord, 148; *Arthur* v. *Broadwax,* 3 Ala. 557. If then a *feme sole* for one purpose, why not for this?

3d. The pauper was emancipated and gained a settlement in Freeman, by being there from 1822 till he was twenty-one, receiving no aid as a pauper. His father had utterly abandoned him; his mother had ceased to have care of him. *Wells* v. *Kennebunk,* 8 Maine, 201.

HOWARD, J. — It is admitted that the father of the pauper never had a settlement within this State. The pauper would, therefore, "follow and have the settlement" of his mother, if she had any. Statute, 1821, c. 122, § 2, mode 2.

It is admitted that the mother resided with her father, when she was married, in 1815, and that he then had a settlement in Kingfield. But it is not admitted, or proved, that she had a derivative settlement from him; nor does it appear that she acquired a settlement in that town, unless it was gained subsequently to her marriage. It is not material in this case, to inquire where her settlement was, if it were not in the town of Kingfield.

The pauper was born in 1816, and before that time, his father had left the mother and the State. The settlement of the mother, if she had any, at the time of the marriage, would not be lost or suspended by her marrying one having no settlement in the State; but she could not gain a settle-

ment in her own right, after marriage, and independent of her husband, while he was living, and the marital relation subsisted. She would be restricted in this respect, by the general legal disabilities of a *feme covert.* His absence from her, and from the State, and neglect to contribute to her support, would not restore her to the rights of a *feme sole;* for, as agreed, she often heard from him through others, and as late as in the year 1842, as living in the Province of New Brunswick. His death could not, therefore, be presumed from his absence, nor was the marriage thereby dissolved.

Where the husband has voluntarily, and absolutely deserted the wife, with intention to renounce the marital rights and duties, and has gone out of the State to remain, or was never an inhabitant of the State; or where he compelled her to leave, and continue separated from him, in another State, the general rule of the common law imposing upon her the disabilities of a married woman, has been relaxed, and she has been allowed to act as a *feme sole*, so far as to contract debts, and transact business in her own name, and to sue and be sued. In such cases she is partially relieved from her legal incapacity, from necessity, and in reference to her security and protection; but the relief extends no further than the objects to be attained. She is not wholly absolved from the general obligations, duties and disabilities of a married woman. She cannot marry again during the life of the husband; nor can she acquire any rights, independent of him, not specially authorized by law, which conflict with the matrimonial relation. The law favors the continuance of that relation, and countenances no act of either party tending to its dissolution, without sufficient cause; and therefore, the gaining of a separate settlement by either, during marriage, is unauthorized, and not warranted by law. *Hallowell* v. *Gardiner*, 1 Maine, 93; *Jefferson* v. *Litchfield*, 1 Maine, 196; *Gregory* v. *Pierce*, 4 Met. 478; See Co. Lit. 132, b. 133, a; *De Gaillon* v. *L'Aigle*, 1 B. & P. 357; *Stratton* v. *Bushnach*, 1 Bing. N. C. 139.

The second marriage of the pauper's mother, "in 1821 or

---

---

1822," was unlawful, and she acquired no rights by residence under that association. It therefore appearing that the father of the pauper had no settlement in this State, and not appearing that the mother had any in Kingfield, the pauper could not have a derivative settlement from either in that town. Before he was of age, he was not competent, upon the facts stated, to gain a settlement in his own right, and it is admitted, that since that time, none has been acquired.

<em>Plaintiffs nonsuit.</em>

Shepley, C. J., and Wells and Hathaway, J. J., concurred.