Applications for allowances of $3,000 denied to all parties.

Applications denied.

---

Matter of the Contest of the City of Syracuse *v.* The County of Onondaga as to the Settlement of LUCY EGGLESTON and Her Minor Children as Poor Persons.

SAME *v.* SAME, as to the Settlement of ETTA SWERIN and Child as Poor Persons.

(County Court, Onondaga County, November, 1898.)

1. **Poor Law of 1896 — Settlement — Not lost by a mere disappearance.**

   A person who comes to a city in January, 1896, and then rents a house, to which, in March, he takes his wife, his family and his household goods, and wherein he resides with them until Feb. 8, 1897, when he leaves the city and disappears, has gained a settlement in the city within the meaning of the Poor Law (Laws of 1896, chap. 225, § 40); the settlement of the wife, notwithstanding the husband's disappearance, follows his; and his continuous absence, without proof of his actual residence or intention, is not such a " continuous residence elsewhere for one year " as deprives him of his settlement in the city, and it is consequently liable to support the wife.

**2. Same — Abandonment of wife as affecting husband's settlement.**

A person who came with his family to the city of Syracuse seven years ago and who about four years later left his wife and went to New York city where he has since remained at work, and who, upon being visited at New York city by his wife about a year after his disappearance, refused to support or live with her unless she procured a divorce, and who never has supported her since, is to be deemed to have acquired a domicile and settlement in New York city; and as, notwithstanding such an abandonment, the wife's settlement, during coverture, follows that of her husband, she cannot, under the Poor Law, be a charge upon the city of Syracuse.

APPEALS from decisions of Smith Rice, Esq., superintendent of the poor of Onondaga county, in the above cases, in which he determined that the poor persons in each case have a settlement in the city of Syracuse, and are not charges upon the county of Onondaga.

The facts in these cases are in many respects similar, and the principles involved in the determination of one apply to such an extent in the determination of the other that they may properly be considered together.

The facts in the Eggleston case are, that Wallace and Lucy Eggleston are husband and wife, and have been married eleven years; that the wife is of full age; that they have four children, the oldest being eight years of age, and the youngest was born in Syracuse in August, 1897. In January, 1896, Wallace Eggleston came to Syracuse, where he remained until February 8, 1897. In March, 1896, he was joined by his wife and their children. The household goods of the family arrived in Syracuse after the arrival of the wife, and were taken to a house which had been rented by the husband before the wife came, and from that time until February 8, 1897, Wallace Eggleston, and his wife kept house and lived together with their family, and the wife and their children have remained in Syracuse ever since. On February 8, 1897, Wallace Eggleston left Syracuse, and his wife has received no assistance from him since that time, and does not know where he now is and has never received any direct information as to his whereabouts.

The facts in the Swerin case are, that William and Etta Swerin are husband and wife and have one child over three years of age; that the wife is of full age. They came to Syracuse from a for-

eign country about seven years ago, and the wife has since resided in Syracuse. Three years ago the husband left his wife without informing her as to his intended departure and went to New York city and has remained there ever since. The wife learned of her husband's whereabouts about a year after he left Syracuse, and she took her child and went to New York where she remained a few days, stopping with relatives of her husband. She had several talks with her husband, but did not learn where he resided. In one of the talks with her husband he said to her that she should get a divorce from him; he would support the baby, would send some money to the baby; if not, he wouldn't give a cent. She received no assistance from him, and the expenses of her returning to Syracuse were paid by some charitable society. The wife upon the trial expressed her willingness to live with her husband, but that he refused to live with her. She learned while in New York that her husband worked at making cigars.

James E. Newell, for city of Syracuse.

J. B. Kline, for county of Onondaga.

Ross, J. It is claimed by the learned attorney for the city of Syracuse:

(a) That in the Eggleston case no settlement was ever obtained in the city of Syracuse.

(b) Assuming that there was a settlement in either case, that by virtue of the provisions of chapter 203 of the Laws of 1897, such settlement was lost by the absence of the husband and that the husband having lost his settlement, their respective families have no settlement, and are properly chargeable to the county of Onondaga.

(c) That in the Swerin case, the father has obtained a settlement in New York city, which becomes the settlement of his family, hence not chargeable to the city of Syracuse.

By the learned attorney for the county of Onondaga:

(a) That in each of these cases a settlement was obtained in the city of Syracuse, and that such settlement has not been lost by reason of any of the existing facts. That a husband who violates his legal duty to provide for his family, cannot, by abandonment, acquire a settlement elsewhere any more than if he were a fugitive from justice.

(b) That if such a settlement can be obtained by the father, that their respective families have by necessity obtained a separate settlement in the city of Syracuse.

There was at common law no duty resting upon either a town or county to support a poor person. One of the first statutes for the relief of poor persons was passed in 1562, 5 Eliz., chapter 3, which provided for a levy by justices of the peace of the Quarter Sessions of a tax for the relief of the poor of a parish upon those parishioners who obstinately refused to pay reasonably towards their relief; and also provided that if there were more poor persons in a parish than they were able to relieve, the justices of the peace may license so many of them as they shall think good to beg. And even in the beginning of this century the poor laws in England were in a very inefficient state. Sanderson's History of England, page 848.

So that the liability of these respective municipalities is wholly statutory. The statutory provisions which determine the liability in these cases are in brief as follows: Chapter 225 of the Laws of 1896 (being the Poor Law), section 40:

" Settlements, how gained.— Every person of full age, who shall be a resident and inhabitant of any town or city for one year, and the members of his family who shall not have gained a separate settlement, shall be deemed settled in such town or city, and shall so remain until he shall have gained a like settlement in some other town or city in this state, or shall remove from this state and remain therefrom one year.     *     *     *

" Section 41. Qualification of last section.—A woman of full age, by marrying, shall acquire the settlement of her husband. Until a poor person shall have gained a settlement in his or her own right, his or her settlement shall be deemed that of the father, if living."     *     *     *     Chapter 203 of the Laws of 1897 amended the Poor Law by the insertion of a new section to be known as section 57, which reads as follows: " Settlement, how lost.— A person who has gained a settlement in a town or city loses the same by a continuous residence elsewhere for one year." Section 42 of the Poor Law provides as follows: *     *     * . " Every poor person, except the state poor, shall be supported in the town or county where he may be, as follows:

" 1. If he has gained a settlement in any town or city in such county, he shall be maintained by such town or city.

" 2. If he has not gained a settlement in any town or city in the county in which he shall become poor, sick or infirm, he shall be supported and relieved by the superintendents of the poor at the expense of the county."      *      *      *

Did Eggleston gain a settlement in the city of Syracuse prior to February 8, 1897, the time he left his family? He came to Syracuse in January, 1896, and remained continuously until his departure in February, 1897. His family arrived in March, 1896, and he and they occupied a house he had rented before their arrival, and they kept house and lived together until the time he left. Section 40 of the Poor Law, already quoted, makes the condition of obtaining a settlement that such person      *      *      *      " shall be a resident and inhabitant of any town or city for one year."      *      *      *

What constitutes a residence.— I. There are very few adjudged cases in this state defining who are residents and inhabitants within the meaning of our poor laws. In re Town of Hector, 24 N. Y. Supp. 479, is a carefully considered decision of the learned county judge of Schuyler county upon this subject. The poor persons under consideration were two Italian laborers who had left their homes and families in Italy, and were employed in railroad construction and liable to be discharged at any time, and free to leave their employment, and living in rough shanties built by railroad contractors. It was held that they had not gained a settlement in the town of Hector, although they had actually been located and lived in that town for over a year. The county judge points out the difference between the construction of the courts in construing the meaning of the word " residents," when used in those statutes seeking to give a remedy against absent debtors, and those in relation to levying taxes, and the statute in question. In the former case a man may have more than one residence, but only one domicile. The county judge holds that the cases furnishing the best analogy are those where the jurisdiction of the court depends upon the residence or inhabitancy of one or both parties in a particular locality, and after citing several cases, states on page 481, as follows:    " It seems to the court that these cases may be regarded as establishing the legal proposition that the words ' resident and inhabitant,' in the statute under consideration, mean a locality of existence as permanent and firmly fixed as is legally conveyed by the word ' domicile,' and that at once disposes of this appeal. It has long been settled law that every person has a domicile some-

where. If he has not acquired one elsewhere, he retains his domicile of origin, and to effect a change of domicile' the fact and intent must concur; that is, there must be, not only a change of residence, but an intention to abandon the former domicile, and acquire another as the sole domicile."

de Meli v. de Meli, 120 N. Y. 485 and 491. Dupuy v. Wurtz, 53 N. Y. 556 the question involved in the last case was whether there was a change of domicile for the purpose of succession. On page 561, Mr. Judge Rapallo says: " There must be both residence in the alleged adopted domicile and intention to adopt such place of residence as the sole domicile. Residence alone has no effect *per se*, though it may be most important, as a ground from which to infer intention. Length of residence will not alone effect the change. Intention alone will not do it, but the two taken together do constitute a change of domicile."

In the case of People v. Platt, 117 N. Y. 159, the defendant was appointed to an office, one of the qualifications of which was that he must be " a resident of the Metropolitan Police District," and it was claimed that he was not such a resident. Upon the trial, it appeared that the defendant had for many years actually resided within the required territory, but during the same period he had always voted, whenever he exercised that right, in the village of Owego, Tioga county, his previous residence, and he testified that he never intended to change his domicile in Owego. Mr. Judge Danforth says on page 167: " The relation (a residence) is one which has a legal sanction, and, in some cases, secures its possessor a settlement and pauper privileges under the poor laws or under the election laws a right to vote. And in all cases where the statute prescribes ' residence' as a qualification for the enjoyment of a privilege, or the exercise of a franchise, the word is equivalent to the place of domicile of the person who claims its benefit." It, therefore, seems that the conclusion of the county judge in the case, in re Town of Hector, that the words " resident and inhabitant," in the statute under consideration, mean a locality as permanent and firmly fixed as is legally conveyed by the word " domicile," was correct. The question is a question of fact rather than of law. Dupuy v. Wurtz, *ante*, page 562.

Applying these principles to the cases before the court, it would seem that Eggleston became a resident and inhabitant of Syracuse in January, 1896, when he came to this city; there was an actual residence and an apparent intention to adopt such place as his

sole domicile. Such intention was intended by every act which a man unable to purchase a residence could exercise. He rented a house, preparing for the reception of his family, and upon their arrival, lived with them in the family relation until he left. No further evidence, as it seems to the court, could exist except oral statements of his intention, which would not naturally and ordinarily be given by a man in his circumstances, and which would be less conclusive than his acts.

Applying these same principles to the Swerin case, has he become a resident and inhabitant of New York city within the meaning of the act in question? The facts are meager; there is the fact of an actual inhabitancy, but this is not enough. In the language of the learned judge who wrote the opinion in Dupuy v. Wurtz, quoting from the English case of Moorhouse v. Lord: " It (change of residence) may be, and is, strong evidence of an intention to change the domicile. But unless in addition to residence there is an intention to change the domicile, no change of domicile is made. * * * and every man's domicile of origin is presumed to continue until he has acquired another sole domicile." Bearing in mind that a person must have a domicile somewhere (Dupuy v. Wurtz, page 561), it is evident from the acts and statements of Swerin and his demand for a divorce from his wife, and his refusal to recognize his wife's claim upon him, that he does not claim a domicile in Syracuse, if not in Syracuse, where? The court, therefore, determines that Swerin, under the facts disclosed in this case, acquired a domicile and consequent settlement in New York city. It was claimed by the learned district attorney on the argument that because Swerin can be brought to this county for trial and compelled to support his family, or be punished as a disorderly person, that his residence still remains in the city of Syracuse. Assuming this to be true, the fact that a person violates a duty he owes to another, or to society, does not determine the place of his residence. The violation of a right of property or person, or the commission of a crime, which would give the courts of a particular locality jurisdiction, does not in any sense determine the place of a man's domicile, but the jurisdiction of the courts in these cases depends solely upon the statutes in relation thereto.

Derivative residence.— II. It is claimed by the learned district attorney that by the abandonment of the husband, the wife acquired a separate domicile or residence, and consequently a settlement. There are some decisions of local courts in Pennsylvania

which hold this doctrine. Central Poor District v. Directors, etc., Quart. Sess., 8 Kulp, 227; same case, Amer. Dig., 1896, page 4212; Royal Sock Township v. Johnson, etc., Quart. Sess, 14 Pa. Co. Ct. 162; Amer. Dig., 1894, 3760.

In the case of Cheever v. Wilson, in the United States court, 9 Wall. 108 and 124, one of the questions sharply litigated was the validity of a divorce obtained by a wife in a state which was not the state of the husband's domicile. The court says, page 124: " The rule is that she (the wife) may acquire a separate domicile whenever it is necessary or proper that she should do so. The right springs from necessity for its exercise, and endures as long as the necessity continues."

The decision in this case arises by reason of the assertion of jurisdiction of the court of a state over the person of a litigant not a resident of the state, and not as between different localities of the same state, and involves the constitutional protection given to the decrees of a court of a state which has acquired jurisdiction of the person, or the subject of the action, and the language heretofore quoted is placed in its true light by the language which immediately follows: " The proceeding for a divorce may be instituted where the wife has her domicile. The place of the marriage, of the offense, of the domicile of the husband, are of no consequence." It would seem that the Cheever case is not in point.

The doctrine of a derivative settlement of the wife is one which is based upon the common and upon the ecclesiastical law of the doctrine of unity of husband and wife, and is clearly supported by our statutory provisions. The settlement of a resident and inhabitant extends to " the members of his family who shall not have gained a separate settlement," and extends to a female living with her husband. Poor Law, § 40. "A woman of full age, by marrying, shall acquire the settlement of her husband." * * * § 41.

It is assumed in the case of minor children who by statute derive their settlement from their father, if living, or if the father be not living, from the mother, that under certain circumstances they may gain a separate settlement as by emancipation, but no provision is made for the acquirement by a married woman of a settlement separate from that of her husband. The statute simply recognizes the unity of the husband and wife. This doctrine has been encroached upon to some extent by statutory enactments principally relating to the wife's control over her own property and

rights of action, but the sanctity of the home relation, the duty to reside together, the right of the husband to select the place of residence, and the duty of the wife to live in the place selected, should be zealously protected. The husband's neglect of his duty to provide a home for his wife and family; compelling them by his wrongful act to live separate from him, does not change the law in relation to the domicile of husband and wife. The law in this regard is not changed because of the husband's violation of a legal duty imposed upon him.

My attention has not been called to any case clearly in point in this state, but in Ohio it has been decided that the abandoned wife during coverture is not legally able to acquire for herself or minor child a legal settlement different from that of her abandoning husband, the father of the child. Trustees of Spencer Township v. Trustees of Pleasant Township, 17 Ohio St. 31.

To the same effect, Inhabitants of Augusta v. Inhabitants of Kingfield, 36 Me. 235; Burlington v. Swanville, 64 id. 78.

It, therefore, follows that the settlement of Mrs. Swerin follows that of her husband, and that she is not properly chargeable upon the city of Syracuse.

*Effect of continuous absence.*— III. It is clear from the principles heretofore stated that Eggleston has not gained a settlement elsewhere. There is no proof of actual residence, or of intention. Hence follows the important consideration, has he lost, by his continuous absence, the settlement he had gained in the city of Syracuse. Chapter 203 of the Laws of 1897, amended chapter 225 of the Laws of 1896 (Poor Laws) by inserting therein a new section heretofore quoted, which provides, that a settlement is lost by a continuous residence elsewhere for one year. Under the poor laws, as they existed prior to this amendment, when a poor person had obtained a settlement, it continued so long as he received aid, notwithstanding that the place of his actual residence might be elsewhere, and notwithstanding the fact that such actual residence might have every element necessary to gain a settlement except the receipt of aid. The evils of this custom were pointed out in the case of the Town of Onondaga v. City of Syracuse, decided by this court and reported in 22 Misc. Rep. 265. As the provisions of the amendment referred to changed the law as it previously existed, they should not be extended by construction beyond their plain meaning. It is evident that the requirement necessary to lose a settlement once gained,

County Court, Wayne County, November, 1898.    [Vol. 25.,

means something more than a continuous absence.    The word
" residence," in section 57 of the Poor Law, must be construed by
the same rules as are used in determining the meaning of the words
" resident and inhabitant," in section 40 of the same act.    It is
to be presumed that all portions of an act are harmonious with
each other, and they should be construed together and not each by
itself.    Sutherland on Statutory Construction, § 215.

It, therefore, follows that " the continuous residence elsewhere
for one year," in section 57, means such a residence and occupancy
for one year as will gain a settlement under the provisions of sec-
tion 40.

It, therefore, follows that the Eggleston case must be affirmed,
with costs, and the Swerin case must be reversed, with costs.

Eggleston case affirmed, with costs, and Swerin case reversed,
with costs.